# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### FOURTH DIVISION

| | |
|---|---|
| **GWEN D. CARLSON,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CASE NO. CV-02-3780 (JNE/JJG)** |
| | ) |
| **C.H. ROBINSON WORLDWIDE, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## DECLARATION OF MARA R. THOMPSON IN SUPPORT OF PLAINTIFF CLASSES' MOTION *IN LIMINE* TO EXCLUDE CERTAIN ANALYSES FROM THE SUPPLEMENTAL EXPERT REPORT OF DR. ELIZABETH BECKER

1.   I am an attorney with the law firm of Sprenger & Lang, P.L.L.C. representing the plaintiff classes in the above-entitled case.  I make this declaration in support of Plaintiff Classes' Motion *in Limine* to exclude any analyses in Dr. Becker's forthcoming supplemental expert report (to be served on or before March 8, 2006) that go beyond the scope of the analyses contained in her 2004 reports and that are not based on the updated and supplemental data that have been produced by CHRW pursuant to the Order Re: Pretrial Procedures and Schedule entered February 21, 2006.  I make this declaration based on my personal knowledge.

2.   Attached as Exhibit 1 is a true and correct copy the Report of Dr. Elizabeth Becker dated March 5, 2004 [Filed Under Seal].

3.   Attached as Exhibit 2 is a true and correct copy of the Report of Dr. Elizabeth Becker in Response to Dr. Thornton's Rebuttal Report dated April 12, 2004 [Filed Under Seal].

4.   Attached as Exhibit 3 is a true and correct copy of the Declaration of Dr. Elizabeth Becker dated September 10, 2004 [Filed Under Seal].

5.   Attached as Exhibit 4 is a true and correct copy of excerpts from the Deposition of Elizabeth Becker taken on September 20, 2004 [Filed Under Seal].

6.   Attached as Exhibit 5 is a true and correct copy of C. H. Robinson's Answer to Plaintiffs' First Set of Interrogatories to Defendant dated April 23, 2003.

7.   Attached as Exhibit 6 is a true and correct copy of the letter from Thomas Hatch to Mara Thompson and Steven Sprenger dated December 30, 2005.

8.   Attached as Exhibit 7 is a true and correct copy of the letter from Thomas Hatch to Michael Lieder dated March 3, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of March 2006, in Minneapolis Minnesota.

*s/ Mara R. Thompson* ___
MARA R. THOMPSON

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

**NOTIFICATION OF
CONVENTIONAL FILING OF
*EXHIBIT 1-4 TO THE DECLARATION OF
MARA R. THOMPSON IN SUPPORT OF
PLAINTIFF CLASSES' MOTION IN LIMINE
TO EXCLUDE CERTAIN ANALYSES FROM
THE SUPPLEMENTAL EXPERT REPORT
OF DR. ELIZABETH BECKER***

*Carlson, et al.*

Plaintiff(s)

v.

Case Number: *02-cv-3780*

*C.H. Robinson Worldwide, Inc.*

Defendant(s)

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's Office:

| | |
|---|---|
| *Exhibit 1:* | *Expert Report of Dr. Elizabeth Becker dated March 5, 2004* |
| *Exhibit 2:* | *Expert Report of Dr. Elizabeth Becker dated April 12, 2004* |
| *Exhibit 3:* | *Declaration of Dr. Elizabeth Becker* |
| *Exhibit 4:* | *Excerpts from the deposition of Dr. Elizabeth Becker* |

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

\_\_\_ Voluminous Document* (Document number of order granting leave to file conventionally: \_\_\_ )

\_\_\_ Unable to Scan Documents (PDF file size larger than the e-filing system allows)

\_\_\_ Physical Object (description):

\_\_\_ Non Graphical/Textual Computer File (audio, video, etc.) on CD or other media

✓ Item Under Seal* (Document number of protective order: 105 )

\_\_\_ Conformance with the Judicial Conference Privacy Policy (General Order 53)
      (Document number of redacted version: \_\_\_ )

\_\_\_ Other (description):

* Filing of these items requires Judicial Approval.

This Notice is e-filed as a place holder in ECF for the documents filed conventionally. A copy of this Notice and a copy of the NEF are filed with the Clerk's Office along with the conventionally filed item(s).

4·23·03

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Gwen Carlson, *et al.*,

                          **Plaintiffs,**

v.

C. H. Robinson Worldwide, Inc.,

                          **Defendant.**

Case No. CV-02-3780 (JNE/JGL)

---

## DEFENDANT'S ANSWERS TO PLAINTIFFS'
## FIRST SET OF INTERROGATORIES TO DEFENDANT

To:    Plaintiffs and their attorneys, Lawrence P. Schaefer and Teresa K. Patton, Sprenger & Lang, PLLC, 325 Ridgewood Avenue, Minneapolis, MN 55403.

Defendant C.H. Robinson Worldwide, Inc. ("Robinson") submits the following Answers to Plaintiffs' First Set of Interrogatories to Defendant:

## <u>COMMENTS AND QUALIFICATIONS</u>

Each of the responses set forth herein is made subject to the following comments and qualifications:

1.    Robinson reserves the right to object on the grounds of competency, privilege, relevancy, materiality, or any other proper ground, to the use of any of the information or documents provided for any purpose, in whole or in part, in any subsequent step or proceeding in this action or any other action.

**EXHIBIT 5**

2.     Robinson reserves the right to object on any and all grounds to other Interrogatories or other discovery involving or relating to the subject matter of Interrogatories responded to herein.

3.     Robinson reserves the right to revise, correct, add to or clarify any of the responses propounded herein.

## GENERAL OBJECTIONS

1.     Robinson objects to each and every Interrogatory propounded by Plaintiffs to the extent that any such Interrogatory seeks information protected by the attorney-client privilege or the attorney work product doctrine.

2.     Robinson objects to each and every Interrogatory propounded by Plaintiffs to the extent they are unreasonably broad in the scope of the information they seek.

## OBJECTIONS TO INSTRUCTIONS

1.     Robinson objects to Instruction A (1) as overbroad and to the extent it describes information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Robinson notes, for example, that it defines Defendant to include businesses, facilities and employees located outside of the United States.

2.     Robinson objects to Instruction A (2) as overbroad and vague.  Robinson states that it will respond to Plaintiffs' requests as required under the Federal Rules of Civil Procedure.

3.     Robinson objects to Instruction A (3) as overbroad and to the extent it describes information which is not discoverable.  Robinson states that its responses below are limited to that required under the Federal Rules of Civil Procedure.

4.     Robinson objects to Instructions B, and E through H as overbroad, burdensome and to the extent they describe information which is irrelevant and not reasonably calculated to

2

lead to the discovery of admissible evidence. Robinson further states that it will respond to Plaintiffs' requests as required under the Federal Rules of Civil Procedure. Further, Robinson objects to Instruction F on the additional grounds and to the extent it is intended to request contact information for Robinson employees who have or had managerial responsibility on behalf of the organization, and for any other person whose act or omission in connection with this matter may be imputed to the organization for purposes of civil liability or whose statement may constitute an admission on the part of the organization. *See* Minnesota Rule of Professional Conduct 4.2. In the case of such employees, they may be contacted through counsel for Robinson.

5.      Robinson objects to Instruction M to the extent it does not universally limit the relevant period for purposes of these discovery requests to January 1, 1997, to the present. Robinson states that it will limit all its responses to the time period from January 1, 1997, to the present.

## ANSWERS

### INTERROGATORY NO. 1:

Identify all present and former employees and outside consultants who have played any role with respect to your determination of compensation and benefits for employees below the level of branch manager. With respect to each such person, state his or her role (e.g., established applicable policies and practices, recommended, reviewed or approved base salary, bonus structure or stock options).

### RESPONSE:

Robinson objects to this Interrogatory as vague, ambiguous, burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of

3

admissible evidence. Robinson notes, among other things, that the term "benefits" is not defined by Plaintiffs and therefore understands that term to mean health insurance, disability insurance, holiday leave, sick leave, and 401 benefits. Further, Robinson understands the term "played any role" not to include individuals or outside consultants who are or were involved in benefits plans, in general, and not as such benefits pertain to any specific employees. Further, Robinson notes that "below the level of branch manager" is a phrase that cannot clearly and readily be applied to Robinson's central office located in Eden Prairie, Minnesota, T-Chek Systems, Inc., and to the extent it cannot be readily applied to any other branch or office.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that branch managers, other profit center managers, and department heads are given all business management responsibilities within their particular branch and the autonomy to build their business and staff, including but not limited to the discretion to add or assign job titles, job responsibilities and to determine the compensation of their staff. In addition, some or all of these individuals engage or may have engaged in yearly compensation reviews with one or more, or a combination of: Greg Goven, Tim Manning, Scott Satterlee, Mike Rempe, Joe Mulvehill, Steve Weiby, Mary Gorski, Looe Baker, and/or Colleen Zwach, regarding their branch, profit center or department business plans, and for the purpose of, in part, learning and administering a particular bonus structure; reviewing financial decisions, including in part, compensation decisions; and for overall financial management of their branch, profit center or department. In addition, Laura Gillund may also play a role with respect to compensation. Robinson refers Plaintiffs to its Rule 26(a) disclosures and documents produced in response to Plaintiffs' First Separate Set of Requests for Production of Documents to Defendant for the identity of branch managers. Robinson further responds that benefits are

4

administered by the Benefits Manager, Heather Blackwell, located at 8100 Mitchell Road, Eden Prairie, MN.   With respect to the identity of individuals referred to herein, but not identified by name herein or in documents or Rule 26(a) disclosures, Robinson will update this Interrogatory response as there is no data readily available to identify these individuals by name.

**INTERROGATORY NO. 2:**

Identify all present and former employees and outside consultants who have played any role with respect to your selection of individuals to fill sales positions below the level of branch manager, whether by promotion, transfer or outside hiring.   With respect to each such person, state his or her role (e.g., posted openings, set qualifications for positions, identified or interviewed candidates, or recommended, reviewed and approved offers of employment).

**RESPONSE:**

Robinson objects to this Interrogatory as vague, ambiguous, burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence.   Robinson notes, among other things, that the Interrogatory seeks production of information regarding Robinson's recruiting and hiring practices from outside the company which are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that branch managers are given all business management responsibilities within their particular branch and the autonomy to build their business and staff, including but not limited to the discretion to add or assign job titles, job responsibilities and the responsibility to promote or transfer Robinson employees into sales positions and into sales supervisory or management positions.   In addition, branch managers may consult with one or more, or a combination of: Greg Goven, Tim Manning, Scott Satterlee, Mike Rempe, Joe

5

Mulvehill, Steve Weiby, Mary Gorski and/or Colleen Zwach, regarding the selection of individuals within their branch. Eric Messenberg may also help facilitate job postings and the interview process. Robinson refers Plaintiffs to Robinson's Rule 26(a) disclosures and, for the identity of other branch managers, plaintiffs' attention is directed to documents produced in response to Plaintiffs' Joint First Set of Requests for Production of Documents to Defendant.

**INTERROGATORY NO. 3:**

Identify all present and former employees and outside consultants who have played any role with respect to your selection of individuals to fill operations positions below the level of branch manager, whether by promotion, transfer or outside hiring. With respect to each such person, state his or her role (e.g., posted openings, set qualifications for positions, identified or interviewed candidates, or recommended, reviewed and approved offers of employment).

**RESPONSE:**

Robinson objects to this Interrogatory as burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence. Robinson notes, among other things, that the Interrogatory seeks production of information regarding Robinson's recruiting and hiring practices from outside the company which are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that branch managers are given all business management responsibilities within their particular branch and the autonomy to build their business and staff, including but not limited to the discretion to add or assign job titles, job responsibilities and the responsibility to promote or transfer Robinson employees into operations positions and into operations supervisory or management positions. In addition, branch managers may consult with

6

one or more, or a combination of: Greg Goven, Tim Manning, Scott Satterlee, Mike Rempe, Joe Mulvehill, Steve Weiby, Mary Gorski and/or Colleen Zwach, regarding the selection of individuals within their branch. Eric Messenberg may also help facilitate job postings and the interview process. Robinson refers Plaintiffs to Robinson's Rule 26(a) disclosures and, for the identity of other branch managers, Plaintiffs' attention is directed to documents produced in response to Plaintiffs' Joint First Set of Requests for Production of Documents to Defendant.

**INTERROGATORY NO. 4:**

State the total number of sales positions below the level of branch manager that were filled in each year during the period 1995 through 2003, and for each separate year state the number of positions by gender that were filled by promotion, transfer and outside hiring.

**RESPONSE:**

Robinson objects to this Interrogatory as vague, ambiguous, burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence.   Robinson notes, among other things, that the Interrogatory seeks production of information regarding Robinson's recruiting and hiring practices from outside the company which are not reasonably calculated to lead to the discovery of admissible evidence. Robinson further notes that because branch managers have the autonomy to fill positions within their branches, whether filled by promotion, transfer or outside hiring, there is no centralized source of information or database that will indicate how many "sales" positions were filled in the various Robinson branches.  In addition, some branch managers may categorize a particular set of job responsibilities as "operations" that another might categorize as "sales" and vice versa, and therefore, identifying all "sales" positions within Robinson would not be possible from a central source of information or database.  Further, branch managers also have autonomy to

7

structure their personnel in terms of supervisory or management positions. These positions vary from branch to branch, and a "promotion" into such position will not necessarily be, and likely will not be, reflected in payroll information. Therefore, there is no centralized source of information or database that can give accurate information regarding the "sales" positions that were filled at Robinson during the relevant time period, and as responsive to this Interrogatory.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that no data is available from which an accurate response to this Interrogatory can be readily derived. A response to this Interrogatory would require individual interviews with the branch managers and other profit center managers for the relevant time period, and as responsive to this Interrogatory.

**INTERROGATORY NO. 5:**

State the total number of operations positions below the level of branch manager that were filled in each year during the period 1995 through 2003, and for each separate year state the number of positions by gender that were filled by promotion, transfer and outside hiring.

**RESPONSE:**

Robinson objects to this Interrogatory as vague, ambiguous, burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence. Robinson notes, among other things, that the Interrogatory seeks production of information regarding Robinson's recruiting and hiring practices from outside the company which are not reasonably calculated to lead to the discovery of admissible evidence. Robinson further notes that because branch managers have the autonomy to fill positions within their branches, whether filled by promotion, transfer or outside hiring, there is no centralized source of information or database that will indicate how many "operations" positions were filled

8

in the various Robinson branches.   In addition, some branch managers may categorize a particular set of job responsibilities as "operations" that another might categorize as "sales" and vice versa, and therefore, identifying all "operations" positions within Robinson would not be possible from a central source of information or database.   Further, branch managers also have autonomy to structure their personnel in terms of supervisory or management positions.   These positions vary from branch to branch, and a "promotion" into such position will not necessarily be, and likely will not be, reflected in payroll information.   Therefore, there is no centralized source of information or database that can give accurate information regarding the "operations" positions that were filled at Robinson during the relevant time period.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that no data is available from which an accurate response to this Interrogatory can be readily derived.   A response to this Interrogatory would require individual interviews with the branch managers and other profit center managers for the relevant time period.

**INTERROGATORY NO. 6:**

Identify all present and former employees and outside consultants who have played any role with respect to your recruitment of candidates for sales positions below the level of branch manager.   For each such person, state his or her role (e.g., determined recruitment strategy and goals, represented company at job fairs).

**RESPONSE:**

Robinson objects to this Interrogatory as burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence.   Robinson notes, among other things, that the Interrogatory seeks production of

9

information regarding Robinson's recruiting and hiring practices from outside the company which are not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 7:**

Identify all present and former employees and outside consultants who have played any role with respect to your selection of individuals to fill branch manager positions, whether by promotion, transfer or outside hiring. With respect to each such person, state his or her role (e.g., posted openings, set qualifications for positions, identified or interviewed candidates, or recommended, reviewed and approved offers of employment).

**RESPONSE:**

Robinson objects to this Interrogatory as burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence. Robinson notes, among other things, that the Interrogatory seeks production of information regarding Robinson's recruiting and hiring practices from outside the company which are not reasonably calculated to lead to the discovery of admissible evidence. In addition, Robinson objects to the use of the phrase "played any role" on the grounds that it is too broad and vague to the extent it could involve numerous individuals who cannot be identified, for example and not limited to, branch managers who may have "played a role" in a individual selection.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that the following individuals are some of the individuals who may have been variously involved in the search, interview and/or hiring of branch managers: Greg Goven, Jim Newman, Looe Baker, Tom Jostes, Colleen Zwach, Barry Butzow, Dianne Johnson, Tim Manning, Mary Gorski, Scott Satterlee, Jim Butts, Steve Weiby, Mike Rempe, and

10

Joe Mulvehill.  In addition, Sid Verdoorn and John Wiehoff also may have had input from time

to time.  Further, plaintiffs' attention is directed to Answer to Interrogatory No.9 below.  To the

extent this Interrogatory also calls for information regarding the selection of the President of T-

Chek Systems, Inc, this Interrogatory will be supplemented.

**INTERROGATORY NO. 8:**

Identify all present and former employees and outside consultants who have played any

role with respect to your:

(a)     evaluation of the work performance of branch managers;

(b)     determination of compensation and benefits for branch managers;

(c)     monitoring of branch manager compliance with company policies and practices
        and employment laws; and,

(d)     disciplining of branch managers for failure to enforce written policies against
        employment discrimination, including sexual harassment.

**RESPONSE:**

Robinson objects to this Interrogatory as vague, ambiguous, burdensome, overbroad, and

to the extent it seeks information which is irrelevant and not likely to lead to the discovery of

admissible evidence. Robinson notes, among other things, that these Interrogatories do not define

the phrase "company policies and practices" which could include all policies relating to a

number of subjects that have no relevance to this action, such as policies regarding antirust

requirements, government regulations, business conflicts, business ethics and confidentiality. For

the purposes of this Interrogatory, Robinson assumes that "compliance with company policies

and practices" refers to gender discrimination, sexual harassment, and Internet policies.  Further,

Robinson notes that these Interrogatories do not define the word "monitoring."  In addition,

11

Robinson specifically objects to subparts (a) and (b) which call for information not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson requires that each employee abide by the Robinson Code of Ethics and Conduct and to read, review, and understand every new Robinson policy or policies or any amendments or modifications to those policies.

Every employee is required to review the Robinson Code of Ethics annually and to annually sign a Certificate of Compliance. Each employee receives notification that there are several avenues to receive information or to report any alleged violation of the Code of Ethics, including contacting a branch manager, or other members of management including, Greg Goven, Colleen Zwach and Robinson in-house counsel.

In addition, there are two avenues through which any employee may report any concerns anonymously, either by the Anonymous Report Form located on the Robinson website or through a toll free number for The Network, an independent company that reports information anonymously to Robinson for investigation. In addition, Robinson maintains an Internet filtering tool, works to prevent access to inappropriate Internet websites, and monitors company e-mail. Greg Goven, Joe Mulvehill, Tim Manning, Scott Satterlee, Jim Butts, Steve Weiby, Colleen Zwach, Mary Gorski, Mike Rempe, Tom Jostes, Amy Taber, Laura Gillund, Chad Lindbloom, Looe Baker, and in-house legal counsel would be variously involved in compliance and discipline with respect to branch managers during the time period 1997 to the present. In addition, John Wiehoff and Sid Verdoorn may also have had input from time to time depending on the circumstances. Robinson refers Plaintiffs' to Robinson's Rule 26(a) disclosures and

12

documents produced in connection with Plaintiffs' First Separate Set of Requests for Production of Documents to Defendant.

## INTERROGATORY NO. 9:

Identify all branch manager positions filled from January 1, 1995, to the present, and with respect to each such position, state or identify:

(a)  the branch location of the position;

(b)  whether the position was posted or advertised and, if so, when and where;

(c)  the qualifications required for the position, whether or not indicated in any job posting;

(d)  the individuals involved in the identification, evaluation and selection of candidates for the position;

(e)  the individuals who were considered for the position, including their gender;

(f)  the individual selected; and,

(g)  if the individual selected was a male, all reasons why he was deemed more qualified for the position than each female sales employee in the branch with the opening.

## RESPONSE:

Robinson objects to this Interrogatory as burdensome and overbroad, to the extent it seeks information from each branch office in the United States where no Carlson named Plaintiffs are working or have, in the past, worked. Robinson will limit its response to this Interrogatory to offices where Carlson named Plaintiffs either are working or have, in the past, worked. Robinson further states that the terms "posted" and "advertised" are vague and ambiguous and nowhere defined by Plaintiffs. Robinson assumes for the purposes of this

13

Interrogatory that the term "posted" refers to an internal distribution among Robinson employees in North America.

Subject to its general objections and objections to instructions, Robinson responds that when a branch manager position becomes available, the personnel in that branch is first considered for elevation to the position. If a person with the necessary skills and experience is in the branch, then the position is filled internally within that branch. Other times, it becomes necessary to consider other candidates outside of the branch to find a qualified replacement.

The branch manager position in the Minneapolis International branch has been filled three times from 1997 to the present, first by Dianne Johnson then Jeff Scovill and most recently by Matthew Castle. Robinson refers Plaintiffs, pursuant to Federal Rule of Civil Procedure 33(d), to the Position Vacancy Notice posted January 30, 2003, for the required qualifications for the most recent opening in that branch. The positions filled by Dianne Johnson and Jeff Scovill were not posted. Greg Goven and Barry Butzow were involved in choosing Dianne Johnson who was selected because she was the candidate that filled the immediate need in the branch for a highly skilled operations person. Dianne Johnson and Greg Goven were involved in choosing Jeff Scovill who directed Robinson's international sales and had previously managed a large logistics project. Jeff Scovill was selected because he was the candidate that filled the immediate need in the branch for an experienced manager with strong sales skills to expand business and had a broad international industry perspective. Joe Mulvehill, Dianne Johnson, Eric Messenberg and Jeff Scovill were involved in choosing Matthew Castle who was selected, in part, because of his strengths in managing people, relationships within the branch network, strategic orientation, ability to work with diverse cultures and in verbal and written communication skills. He also had a broader range and scope of global business experience than the other applicants, particularly in

14

Asia.   Other applicants considered include Adam Hall, Gwen Carlson, Bryan Arent, Dave Watson, Brett Fenner, Brant Weber, Bill Farrell, Herb Hardner, Matt Ostrowski and Chris Martinson.

The branch manager position in Salt Lake City, Utah, has been filled three times from 1997 to the present, first by Scott Satterlee then Chris Czekai and most recently by Stephanie Harrison. Qualifications for the position include operational excellence in business management, demonstrated ability to devise, implement and execute a sales plan, demonstrated ability to develop customer and carrier relationships, demonstrated ability to manage, develop, interact with and motivate people.   The position was not posted.   Greg Goven, Roger Lowe and Vince Immordino or Tom Jostes were involved in choosing Scott Satterlee who had been working in the branch for several years and had extensive experience in all branch operations including but not limited to large account management and staff management and development. Scott Satterlee and Tim Manning were involved in  choosing Chris Czekai who had been working in the branch and had successfully performed his duties as assistant manager. He had excelled at establishment of carrier strategies, customer development, account management and staff training.  Stephanie Harrison was in final contention for the position, however, at that time had not developed a complete skill set needed for the position, had limited profit and loss exposure, had only managed one large account that had experienced administrative problems and had not yet developed the staff management experience necessary for the position.   Christopher Czekai elevated Stephanie Harrison to assistant manager and two years later she was elevated to branch manager, having been chosen by Scott Satterlee and Tim Manning.  The position was not posted.

The branch manager position in Chicago North branch has been filled once since 1997 by Gene Schiesser.   Qualifications for the position included operational excellence in business

15

management, demonstrated ability to devise, implement and execute a sales plan, demonstrated ability to develop customer and carrier relationships, demonstrated ability to manage, develop, interact with and motivate people with emphasis on knowledge of domestic transportation business including but not limited to knowledge of domestic rules and regulations, demonstrated skills for success in customer development and sales in a highly dynamic and competitive transportation hub. The position was not posted. Greg Goven and Tom Jostes were involved in choosing Gene Schiesser. He had successfully performed as branch manager in Jackson, Mississippi, having demonstrated effective leadership, team management and business development skills. As stated above, each person in the branch was considered but no individual possessed the necessary experience and skills to successfully manage the branch.

The branch manager position in New Orleans has not been filled since 1997. Duane Leier retired in 2000. After that time, the produce function in New Orleans was managed by Kevin Meguire in Dallas, Texas. Currently, there is no longer a produce function in New Orleans.

The branch manager position in Orange County, Los Angeles, has been filled once since 1997 by David Nystie. Qualifications for the position included operational excellence in business management, demonstrated ability to devise, implement and execute a sales plan, demonstrated ability to develop customer and carrier relationships, demonstrated ability to manage, develop, interact with and motivate people, with an immediate need for an experienced and mature industry professional with strong sales and leadership skills to expand the business in Orange County. The position was not posted. Greg Goven, Tim Manning, Barry Butzow, and John Salpietra were involved in choosing David Nystie. He had extensive industry experience including but not limited to multimodal experience, and had excelled in a larger branch office

16

demonstrating sales and leadership and business development skills as well as training skills. As stated above, each person in the branch was considered but no individual possessed the necessary experience and skills to successfully manage the branch. Others in final contention included Robert King, Rob Pierson, Scott Satterlee and Ron Mitchell.

The branch manager position in Pleasanton, California, has been filled once since 1997 by Dianne Lujan. Qualifications include demonstrated ability to generate and maintain sales growth and customer and carrier relationships, manage staff and the ability to manage branch operations. The position was not posted. Tim Manning and Scott Satterlee were involved in choosing Dianne Lujan who was working in the branch and had demonstrated the required skills to be elevated to branch manager. Dianne Lujan also filled the immediate need in the branch for a leader with strong sales skills. As stated above, each person in the branch was considered. Others in final contention include Ron Mitchell and Tonya Schneider.

The branch manager position in Yakima, Washington, has been filled once since 1997 by Michael "Ed" Schumacker. Qualifications for the position included operational excellence in business management, demonstrated ability to devise, implement and execute a sales plan, demonstrated ability to develop customer and carrier relationships, demonstrated ability to manage, develop, interact with and motivate people. The position was not posted. Tim Manning and Scott Satterlee were involved in choosing Ed Schumacker after having first offered the position to Megan Cowan in the Portland office who declined the offer. Ed Schumacker had demonstrated success in operations, sales and management while at the Seattle branch office. As stated above, each person in the branch was considered but no individual possessed the necessary experience and skills to successfully manage the branch.

17

The branch manager position in Rochester, New York, has been filled once since 1997 by Brad Dexter. Qualifications for the position included operational excellence in business management, demonstrated ability to devise, implement and execute a sales plan, demonstrated ability to develop customer and carrier relationships, demonstrated ability to manage, develop, interact with and motivate people. The position was not posted. Wayne Perry and Greg Goven were involved in choosing Brad Dexter who was performing the work of a manager in the Rochester branch. He had demonstrated success in transportation management, managing staff and operations of the branch. As stated above, each person in the branch was considered but no other individual possessed the necessary experience and skills to successfully manage the branch.

**INTERROGATORY NO. 10:**

With respect to CHRW employees holding the dual titles of branch manager and (non-corporate) vice president, indicate the significance of this designation, including, but not limited to, any additional duties, responsibilities, decision-making authority, compensation or privileges conferred.

**RESPONSE:**

Subject to its general objections and objections to instructions, Robinson responds that persons who have held dual titles of field vice president or branch vice president/branch manager have not received any additional duties, responsibilities, decision-making authority, compensation or privileges due to the title, but rather, the dual title had more to do with customer relationships.

18

**INTERROGATORY NO. 11:**

Identify all present and former employees and outside consultants who have played any role with respect to your response to complaints, allegations, reports or charges of gender (female) discrimination or pregnancy discrimination. For each such person, state his or her role (e.g., interviewed witnesses, provided training, recommended discipline).

**RESPONSE:**

Robinson objects to this Interrogatory as unduly burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence. Robinson notes, among other things, that the Interrogatory appears to seek production of class discovery regarding pregnancy discrimination which is not alleged as a putative class. Robinson will respond to the pregnancy discrimination portion of this Interrogatory only as it relates to the individual claims made by Plaintiffs Tricia Porter and Jennifer Smyrl. In addition, Robinson understands the term "outside consultants" not to include outside legal counsel.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that per the Robinson Code of Ethics, each employee is notified of several possible reporting mechanisms including contacting their branch manager or other members of management including Greg Goven, Colleen Zwach and/or in-house legal counsel and that any one of these persons may have a role with respect to responses to complaints, allegations, reports or charges of discrimination. Further, Robinson employees may report any concerns anonymously, either through an Anonymous Report Form located on the Robinson website or through a toll free phone call to "The Network," an independent company that receives such reports or complaints and then reports that information anonymously to

Word 15061713.1

Robinson for investigation. The persons at the Network therefore may have a role as well. In addition, Greg Goven, Joe Mulvehill, Tim Manning, Mike Rempe, Colleen Zwach, Scott Satterlee, Jim Butts, Barry Butzow, Mary Gorski, Heather Cooper, Laura Gillund, in-house legal counsel and Amy Taber may have played a role in responding. The role of a particular individual would vary depending on needs and timing of a particular circumstance. Outside consultants who provided training include individuals from Ceridian, including Peter Juul, Kevin Bourne, Marjorie Nichols and Diane Syer; Heidi Welch; and Nadia Younes. Robinson refers Plaintiffs' to Robinson's Rule 26(a) disclosures and Robinson's company directory produced in connection with Plaintiffs' First Separate Set of Requests for Production of Documents to Defendant. Ceridian Corporation, is located at 3311 Old Shakopee Rd., Bloomington, MN. In addition, see Response to Interrogatory No. 8 above.

**INTERROGATORY NO. 12:**

Identify all present and former employees and outside consultants who have played a role with respect to your planning, development, oversight, and monitoring of compliance with equal employment opportunity requirements and obligations, and local, state and federal anti-discrimination laws. For each such person, state his or her role.

**RESPONSE:**

Robinson objects to this Interrogatory as vague, ambiguous, burdensome, overbroad, and to the extent it seeks information which is irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Robinson understands the term "outside consultants" not to include outside legal counsel.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that Greg Goven, Tim Manning, Laura Gillund, Colleen

Word 15061713.1

Zwach, Mary Gorski, Chad Lindblom, Amy Taber, Heather Cooper and in-house legal counsel were or are all variously involved in the planning and development of Robinson's compliance policies. In addition, see Answer to Interrogatory No. 8 above.

**INTERROGATORY NO. 13:**

Identify all present and former employees and outside consultants who have played any role with respect to your training of employees at all levels on the company's sexual harassment, internet, and e-mail policies. For each such person, state his or her role.

**RESPONSE:**

Robinson notes, among other things, that the Interrogatory seeks training information concerning every Robinson employee in every office and every position of employment, and to that extent, the Interrogatory is overbroad and burdensome in that in would require an investigation of all branch offices and profit centers to assemble each individual instance here.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that training has been provided by in-house legal counsel, Amy Taber, Heather Cooper, and Ceridian consultants Peter Juul, Kevin Bourne, Marjorie Nichols and Diane Syer; Heidi Welch, and Nadia Younes.   Branch managers may also be involved in certain training within their branch. Robinson refers Plaintiffs' to Robinson's Rule 26(a) disclosures and documents produced in connection with Plaintiffs' First Separate Set of Requests for Production of Documents to Defendant.  Ceridian Corporation is located at 3311 Old Shakopee Rd., Bloomington, MN.

**INTERROGATORY NO. 14:**

Identify all actions taken by your company to address or prevent sexual harassment or conduct contributing to a hostile environment such as the dissemination of obscene or pornographic material via your company e-mail system.

**RESPONSE:**

Robinson objects to the use of the term "all actions" as it is overbroad and burdensome to investigate and report here each action taken by Robinson employees, including but not limited to branch managers and other profit center managers, such that would be responsive to this Interrogatory.

Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that it maintains a Corporate Compliance Program, part of which is the Robinson Code of Business Ethics and Conduct which requires every employee to conduct themselves in a professional manner. Upon hiring, each employee receives the Code of Ethics and is responsible for reading and following all practices and policies therein, including but not limited to Robinson's policies against sexual harassment, against unacceptable use of e-mail and Internet, and against discrimination.

Further, each Robinson employee is notified of several possible reporting mechanisms including contacting their branch manager, profit center manager, or other members of management including Greg Goven, Colleen Zwach and in-house legal counsel. In addition, employees may report any concerns anonymously, either through an Anonymous Report Form located on the Robinson web site or through a toll free phone call to "The Network," an independent company that receives such reports or complaints and then reports that information anonymously to Robinson for investigation.

Robinson also provides ongoing training to employees regarding its policies including training specific to new employees, branch managers, and other profit center managers. Further, Robinson has maintained an Internet filtering tool, works to prevent access to inappropriate Internet websites and has monitored company e-mail. Alleged violations of company policy are investigated and responded to on a case-by-case basis which may include a range of disciplinary action(s), company wide communication(s) and additional compliance training. In addition, see documents produced in connection with Plaintiffs' First Separate Set of Requests for Production of Documents to Defendant.

## INTERROGATORY NO. 15:

State whether your company has maintained any equal employment opportunity or affirmative action programs, and, if so, describe such program(s), indicating their function and the period of time they have been in effect, and identifying any employees and outside consultants involved in their operation along with the role of each such person.

## RESPONSE:

Subject to its general objections and objections to instructions, Robinson states that it has no formal equal employment or affirmative action programs, and investigation into any other responsive information continues.

## INTERROGATORY NO. 16:

State whether any statistical or non-statistical reports exist regarding the affect [sic] of CHRW's personnel practices on female employees and, if so, identify all employees and outside consultants involved in preparing or updating any such reports.

**RESPONSE:**

Subject to its general objections and objections to instructions, Robinson states that it has conducted a reasonable inquiry and is not aware of any such report at this time, and that investigation continues concerning whether any report potentially relevant to the allegations in this lawsuit may exist.

**INTERROGATORY NO. 17:**

Identify each person likely to have discoverable information that CHRW may use to support its answer to plaintiffs' claims or its defenses. Identify the subject of the information each person has, and state the date(s) that CHRW has contacted that person if such contact has occurred.

**RESPONSE:**

Subject to its general objections and objections to instructions, Robinson refers Plaintiffs to the Rule 26 (a) reports of Robinson and Plaintiffs.

**INTERROGATORY NO. 18:**

Identify all plaintiffs who you claim have downloaded material containing adult content from other employees' computers without authority or permission.

**RESPONSE:**

Subject to its general objections and objections to instructions, Robinson states that upon information and belief, Gwen Carlson and Amy Hossenlopp downloaded material containing adult content from other employees' computers without authority or permission.

**INTERROGATORY NO. 19:**

Describe all complaints you have received concerning electronic material containing adult content in the workplace and for each such complaint, state:

24

(a)   the date of the complaint;

(b)   the name of the employee who made the complaint;

(c)   the name of the employee(s) accused of possessing, accessing, displaying or disseminating such material;

(d)   whether the complaint was investigated and, if so, by whom;

(e)   the results of any such investigation including, but not limited to, any adverse action taken against the employee(s) accused of the wrongdoing.

**RESPONSE:**

Subject to its general objections and objections to instructions, Robinson refers Plaintiffs, pursuant to Federal Rule of Civil Procedure 33(d), to records of complaints that it has or will produce in response to Plaintiffs' First Separate Set of Requests for Production of Documents to Defendant.

**INTERROGATORY NO. 20:**

In its Answer at ¶ 19, CHRW states that "its subsidiaries and branch managers report to Robinson's executive team located in Eden Prairie, Minnesota. . ." Indicate the personnel matters about which subsidiaries and branch managers report or have reported to CHRW's executive team, as well as the manner of reporting.

**RESPONSE:**

Robinson objects to this Interrogatory to the extent it selectively cites to Robinson's Answer at ¶ 19 and therefore mischaracterizes Robinson's response. Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson responds that branch managers and other profit center managers report profit and loss information including revenue growth, expense percentages and credit and finance figures which

25

are reported each month. As necessary, members of Robinson's executive team discuss these profit and loss results with branch managers and other profit center managers and consult on methods for greater growth and revenue expansion. Robinson's executive team is also available to consult on business matters, including personnel matters, as requested by branch managers and other profit center managers, the subject matter of which might concern any aspect of the business that may arise at the branch.

## INTERROGATORY NO. 21:

State the material facts underlying CHRW's assertion in its Answer at ¶ 19 that "Robinson's subsidiaries and branch managers have autonomy in personnel decisions, including but not limited to, hiring, firing, pay and promotion."

## RESPONSE:

Subject to its general objections and objections to instructions, Robinson directs Plaintiffs' attention to the Memorandum of C.H. Robinson Worldwide, Inc., in Support of its Motion to Dismiss Collective Action Allegations and in Opposition to Plaintiffs' Joint Motion for Leave to Send Notices to Putative Classes and the affidavits submitted therewith as well as the Memorandum of Defendant C.H. Robinson Worldwide, Inc., in Opposition to Plaintiffs' Joint Renewed Motion For Leave To Send Notice to Putative Collective Action Members and the affidavits submitted therewith.

## INTERROGATORY NO. 22:

In its Answer at ¶ 30, Robinson "admits that payroll maintains records generally divided into a number of categories including, but not limited to sales positions and operations positions." Identify all of the categories that are or have been used to maintain payroll records.

26

**RESPONSE:**

Robinson objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 3 of Plaintiffs' First Joint Combined Set of Requests for Admission and Interrogatories. Subject to the foregoing and, in addition, subject to its general objections and objections to instructions, Robinson directs Plaintiffs' attention to Answer No. 3 of Defendants' Response to Plaintiffs' First Joint Combined Set of Requests for Admission and Interrogatories.

**INTERROGATORY NO. 23:**

In its Answer to ¶ 51, CHRW states that "Sharon McDonald reported an incident to branch manager Scott Douthitt in which Mark Bridges had snapped the elastic on her underwear." Describe the investigation of this incident, if any, of the findings of the investigation and any disciplinary action taken against Mr. Bridges or other employees in response to this incident.

**RESPONSE:**

Subject to its general objections and objections to instructions, Robinson states that after Ms. McDonald reported the incident to Mr. Douthitt, Mr. Douthitt spoke with both Ms. McDonald and Mr. Bridges. This investigation determined that Mr. Bridges' actions did not meet the professional standards of Robinson. Mr. Bridges was disciplined, received a written warning, was placed on probation and was required to attend a compliance tutorial. Mr. Bridges' compensation also was affected in that his earning potential for the following year was not advanced. Mr. Bridges' and Ms. McDonald's work spaces were moved so that the need for their interaction was greatly reduced.

Dated:  this 23rd day of April, 2003.

**AS TO ANSWERS:**

C. H. ROBINSON WORLDWIDE, INC.

BY: _____

Its: _AS6ISTANT  GENERAL  COUNSEL_

Subscribed and sworn to before me
this 23rd day of _APRIL_ , 2003.

_____
Notary

JODY M BUTLER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2005

**AS TO OBJECTIONS:**

Dated this 23rd day of April, 2003.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _____
Janet C. Evans (MN Bar No. 182734)
Thomas B. Hatch (MN Bar No. 150939)
Douglas R. Boettge (MN Bar No. 0237292)
Robyn E. Anderson (MN Bar No. 284269)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Phone: 612-349-8500
Fax: 612-339-4181

**ATTORNEYS FOR DEFENDANT**

28

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

Thomas B. Hatch
612-349-8206

December 30, 2005

Steven M. Sprenger, Esq.                    **VIA FEDEX**
Sprenger & Lang
1400 Eye Street N.W., Suite 500
Washington, D.C. 20005

Mara Thompson, Esq.                         **VIA HAND DELIVERY**
Sprenger & Lang, PLLC
310 Fourth Avenue South
Suite 600
Minneapolis, MN 55415

Re:   *Gwen D. Carlson, et al. v. C. H. Robinson Worldwide, Inc.*
       Our File No.: 122710-0000

Dear Ms. Thompson and Mr. Sprenger:

Enclosed and served upon you, please find the Supplementation of Defendant's First Amended Answers to Plaintiffs' First Set of Interrogatories to Defendant (and attached spreadsheet).

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Thomas B. Hatch

TBH/lw
enclosure

**EXHIBIT 6**

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis MN 554..
TEL: 612-349-3500 FAX ...
www.rkmc.com

ATTORNEYS AT LAW

THOMAS B. HATCH
612-349-8206

March 3, 2006

Michael D. Lieder, Esq.
Sprenger & Lang, PLLC
1400 Eye Street N.W.
Suite 500
Washington, D.C. 20005

    Re:   *Carlson, et al. v. C. H. Robinson*
           File No.: 122710-0000

Dear Mr. Lieder:

This responds to some of the questions that you raised yesterday in your letter and in your email with the spreadsheet labeled "examples."

My understanding, based upon information from the personnel involved in the conversion from Cyborg to PeopleSoft, is that if there was an employee who terminated prior to the conversion, then only two rows of that employee's personnel history were transferred to PeopleSoft and the last position description was applied to both rows. For example, Doug Krapf was promoted to branch manager on January 1, 2001, and continued to be a branch manager until his termination, but because he terminated prior to the conversion into PeopleSoft, the branch manager title was applied for all other activity that appears for Mr. Krapf in PeopleSoft. The same scenario applies to each of the individuals in the "examples" spreadsheet.

I hope to have more answers for you Monday regarding the other spreadsheet that you sent with your letter of March 2, 2006, but I want to reiterate what I stated to you in a voice mail message and in our last telephone conversation. In an interrogatory, the plaintiffs asked C.H. Robinson to identify all promotions to branch manager positions. We did that for all promotions occurring after the beginning of the class period (August 2000) and produced a spreadsheet which has now been designated with temporary ID number 697 on the C.H. Robinson exhibit list. This spreadsheet was included in the interrogatory answer and the interrogatory answer was signed under oath by a representative of C.H. Robinson. The spreadsheet represents C.H. Robinson's best effort to respond to that interrogatory and is based upon information in the Cyborg and PeopleSoft databases, as well as interviews with people with personal knowledge of the promotions. To the extent that there are differences between what is in the spreadsheet and what

**EXHIBIT 7**

Michael D. Lieder, Esq.
March 3, 2006
Page 2

you see in Cyborg or in PeopleSoft, you should rely upon the spreadsheet. We will be checking the spreadsheet against the items that you have pulled out of Cyborg and PeopleSoft and if we find that there have been errors in the spreadsheet, we will make the change.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Thomas B. Hatch

TBH/lw

# ROBINS, KAPLAN, MILLER & CIRESI LLP

2800 LASALLE PLAZA
800 LASALLE AVENUE
MINNEAPOLIS, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

FROM:    Thomas B. Hatch, Esq.

The information contained in this facsimile message is privileged and confidential information intended for the use of the addressee listed below and no one else. If you are not the intended recipient or the employee or agent responsible to deliver this message to the intended recipient, please do not use this transmission in any way, but contact the sender by telephone.

DATE:      March 3, 2006

TO:        NAME:                    FACSIMILE NO.:        TELEPHONE NO.:

           Michael D. Leider, Esq.   202-332-6652          202-265-8010

FILE NO.:   122710.0000

NUMBER OF PAGES INCLUDING COVER SHEET:    3

**If transmission problems occur, or you are not the intended recipient, please call 612-349-8730 or contact Linda Wolf at 612.349.8744.**

MESSAGE:

Original Mailed

ATLANTA      BOSTON      LOS ANGELES      MINNEAPOLIS      NAPLES      SAINT PAUL      SANTA ANA      WASHINGTON, D.C.