UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gwen Carlson, et al.,

      Plaintiffs,

v.                                                        Civ. No. 02-3780 (JNE/JJG)
                                                          ORDER

C.H. Robinson Worldwide, Inc.,

      Defendant.

Having considered the parties' filings concerning the proposed settlement, and the filings of any other persons, including any members of the two classes who chose to comment on the proposed settlement, and having conducted a fairness hearing on September 18, 2006, at which persons with comments were invited to voice their opinions about the proposed settlement, the Court makes the following Findings of Fact, Conclusions of Law, and Order.

## FINDINGS OF FACT

**BACKGROUND**

1.     Defendant C.H. Robinson Worldwide, Inc. (C.H. Robinson) is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota.

2.     The named Plaintiffs are a group of 12 women (Named Plaintiffs). They are current or former employees of C.H. Robinson and each works or worked in its domestic branch network.

3.     On June 13, 2001, Plaintiff Gwen Carlson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against C.H. Robinson asserting sex discrimination claims with respect to the work environment, compensation, and promotions. Subsequently, the other named Plaintiffs filed similar charges of discrimination. All named Plaintiffs received "right to sue" letters from the EEOC.

4. On October 2, 2002, Plaintiffs filed their Complaint initiating this action. In their Complaint, as later amended, Plaintiffs asserted, among other things, individual and class claims of sex discrimination based on their respective charges of discrimination.

5. On February 27, 2003, the Court entered a Stipulated Order granting plaintiffs' motion for leave to file their Second Amended Complaint adding two additional named plaintiffs.

6. On June 17, 2003, the Court granted Defendant's motion for judgment on the pleadings and dismissed the sex discrimination claims of named Plaintiffs Marti Justet and Stacey Hottois based on their failure to timely file charges of discrimination.

7. On March 5, 2003, the parties commenced discovery. During the course of the litigation, the parties undertook substantial discovery. They served and responded to interrogatories; produced and reviewed more than 100,000 pages of paper documents and thousands of e-mails; consulted with a host of expert witnesses who prepared reports, including statisticians/labor economists, who analyzed C.H. Robinson's computer-readable employment data; took or defended more than 100 depositions; and, assembled voluminous anecdotal information from witnesses that was exchanged in the form of sworn declarations. The discovery period closed on March 19, 2004.

8. On May 28, 2004, Plaintiffs filed their motion to maintain their Title VII sex discrimination claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. C.H. Robinson opposed Plaintiffs' motion. On March 31, 2005, the Court issued an Order denying in part and granting in part Plaintiffs' motion to maintain their Title VII sex discrimination claims as a class action. The Court denied the motion with respect to the hostile work environment claims, and granted the motion with respect to the compensation and branch

manager promotion claims. In addition, the Court severed the issues of liability and declaratory or injunctive relief from Plaintiffs' requests for monetary damages and certified only the issue of liability and request for declaratory or injunctive relief as a Rule 23(b)(2) class action. The Court appointed Sprenger & Lang, PLLC to serve as class counsel. The Court certified separate classes for purposes of the two certified claims, defined as follows:

- All females employed on a full-time salaried basis at any domestic C.H. Robinson branch office at any time since August 17, 2000, who have been or may be subjected to C.H. Robinson's challenged compensation policies and practices (Compensation Class); and

- All females employed at any domestic C.H. Robinson branch office at any time since August 17, 2000, who have more than two years experience in a sales and/or operations position and who have been or may be subjected to C.H. Robinson's challenged promotions polices and practices (Promotions Class).

9. In the same Order, the Court granted ten of C.H. Robinson's motions for summary judgment with respect to Plaintiffs' individual hostile work environment claims and denied two of C.H. Robinson's motions for summary judgment with respect to Plaintiffs' individual hostile work environment claims.

10. A class liability trial on the certified pay and promotion claims (Class Claims) was scheduled to begin on April 11, 2006.

11. On April 4, 2006, the Court held a final pretrial conference and issued rulings on the numerous evidentiary motions and the general conduct of trial.

12. On April 10, 2006, class counsel and counsel for C.H. Robinson agreed on a class action settlement in principle with the assistance of John Borg, who was appointed by the Court as a Special Master to serve as a mediator in this case. On April 11, 2006, class counsel and counsel for C.H. Robinson advised the Court that they had reached a settlement in principle with respect to the Class Claims and the individual discrimination claims of the Plaintiffs (Counts I,

3

II, and IV of the Second Amended Complaint), excluding all Fair Labor Standards Act claims (Count III of the Second Amended Complaint).

13.     At the parties' request, the Court continued the class liability trial pending final approval of the proposed settlement pursuant to Rule 23(e).

14.     On June 9, 2006, the parties filed their joint motion for preliminary approval of a Settlement Agreement and Consent Decree containing the terms of their settlement, respective supporting memoranda as well as a host of related exhibits.

15.     On June 12, 2006, the Court entered an Order preliminarily approving the Settlement Agreement and Consent Decree (Consent Decree). The Order provided for, among other things, notice of the proposed settlement to be given to class members. The Court approved the notice and claim form as meeting the requirements of Fed. R. Civ. P. 23 to inform class members of the terms of the settlement and of the steps class members needed to take to file claims and to object to or exclude themselves from the settlement. The Court also approved a two-pronged plan for providing notice to class members, involving the direct mailing of notice and the posting of notice on a website maintained by class counsel.

**PROVISION OF NOTICE TO CLASS MEMBERS**

16.     Shortly after June 12, 2006, class counsel posted the Court's Order as well as the notice and claim form on its case web site, www.chrwgendercase.com.

17.     On June 22, 2006, C.H. Robinson provided class counsel with two class lists entitled Compensation Class and Promotion Class. Each list contained the names and last known addresses of class members as determined from C.H. Robinson payroll records.

18.     On June 29 and 30, 2006, class counsel mailed the notice and claim form to 1,836 individuals. Included amongst these 1,836 individuals are those whose names appeared on

either class list provided by C.H. Robinson in June 2006 as well as 56 additional individuals whose names appeared on previous class lists provided by C.H. Robinson in June 2005.

19. The U.S. Postal Service returned approximately 183 notice packages to class counsel as "undeliverable." Using Smartlinx®, a Lexis Nexis™ electronic database product, class counsel used its best efforts to locate current addresses for the individuals whose notices were returned and resend the notices and claim forms. When class counsel was unable to obtain a current address using Smartlinx®, it requested C.H. Robinson to independently investigate and provide an updated address. Upon receiving updated addresses from C.H. Robinson, class counsel resent the notice and claim form.

20. As of the September 5, 2006, class counsel has received 231 claim forms, 22 valid and timely requests for exclusion, one untimely and invalid request for exclusion and no objections or comments to the parties' proposed class settlement.

21. The actions of class counsel and C.H. Robinson to inform class members of the settlement conform to their obligations under the June 12, 2006, Order and are sufficient to advise class members of the settlement to the extent reasonably practicable.

**EVALUATION OF THE SETTLEMENT**

22. The settlement was reached through arms-length negotiations facilitated by a court-appointed Special Master.

23. The programmatic relief provided by the settlement addresses the significant issues raised in the Complaint. Among other things, C.H. Robinson must: (1) appoint an EEO Director and two EEO specialists; (2) implement documented annual performance evaluations for all salaried employees; (3) discontinue its use of the "Stein" tests and inventories; (4) post all openings for branch managers at new branches; (5) implement a women's peer networking

circle; (6) implement a voluntary mentoring program for female sales and operations employees with the goal of developing more female employees for management positions; (7) conduct annual employee surveys; (8) adopt client entertainment guidelines prohibiting client entertainment at inappropriate venues; and (9) report on its implementation of the programmatic relief and consider feedback from class counsel and an independent class monitor.

24.   The allocated portions of the $15,000,000.00 monetary fund created pursuant to the settlement will adequately compensate class members for any claimed losses.

25.   Each class faced at least three substantial risks in this case in addition to the risks, expenses, and delay normally associated with employment discrimination class actions.  First, if Plaintiffs' statistical analyses were rejected, the classes would be almost certain to lose and, thus, not obtain the advantage of burden-shifting under *Teamsters* at any subsequent individual remedial mini-trials.  Second, the Court had not yet been persuaded that either economic damages or punitive damages could be determined or awarded on a class-wide basis.  And finally, economic damages, whether awarded on a class-wide or other basis, may have been greatly reduced if Plaintiffs were unable to establish a continuing violation and, thus, extend the back pay liability period.

26.   Regardless of the outcome of the class liability trial, litigation would have continued to be protracted and expensive, especially if an appeal were taken and a large number of individual damages hearings went forward.

27.   At the time the settlement was reached, both parties were fully prepared to try the Class Claims to a jury.  Class counsel was well positioned to evaluate benefits of settlement against the risks of continuing litigation.  The settlement was reached on the eve of trial, at which time class counsel had: reviewed the numerous documents produced by C.H. Robinson during

the course of the litigation and was thoroughly familiar with those the parties intended to offer at trial; analyzed C.H. Robinson's employment data regarding compensation and promotions; prepared its witnesses for trial; and deposed C.H. Robinson's key management personnel and experts who were scheduled to testify at trial.

28. The Court's Order required that all claim forms to participate in the settlement's monetary relief provision as well as opt-outs from and objections to the settlement from class members be postmarked by August 25, 2006.

29. As of September 5, 2006, class counsel had received 231 claim forms, no objections to or comments about the settlement and 22 timely and valid opt-outs, as well as one untimely and invalid opt-out, from the settlement. Only one of the 22 timely and valid opt-outs offered any reason for why she desired to opt out – because she didn't feel she was a victim of discrimination. The lack of objections, the relatively small number of opt-outs and the number of claimants show strong support for the settlement from class members.

30. Class counsel has extensive experience in prosecuting employment discrimination class actions. Class counsel and the class representatives believe that this settlement is fair, reasonable, and adequate.

31. Both the programmatic and monetary benefits of the settlement will be shared by Named Plaintiffs and class members. Named Plaintiffs will be treated the same as other class members with respect to the settlement of the Class Claims. To the extent that they are entitled to receive additional settlement monies outside of the class claims process, they are required to give additional consideration – that is, a broader release of claims than the release to be signed by other class members, including the relinquishment of their individual appellate rights, and, in three instances, the voluntary termination of their employment with C.H. Robinson.

32. The changes in policies and practices mandated by the programmatic relief provisions of the Consent Decree will be equally available to Named Plaintiffs and all members of the two classes. The Consent Decree does not contain any injunctive provisions, such as job promotions, specifically benefiting any of the Named Plaintiffs. The programmatic relief provisions are designed to enhance C.H. Robinson's human resources policies to further equal employment opportunities for its employees. The Consent Decree does not provide for any class-wide preferential treatment via quotas or for the displacement of any incumbent from a job.

33. The Consent Decree provides that the Class Claims Portions of the Fund will be allocated to members of the classes who timely file claim forms based on a formula to be developed by class counsel and approved by the Court that awards points for different factors contributing to the strength and dollar value of their individual claims. The details of the formula, as well as the specific awards, must be submitted to the Court for approval before any disbursements are made.

34. The Consent Decree establishes a Legal & Administrative Expense Portion from which class counsel seeks an award of attorneys' fees in the amount of $5,325,000, and cost reimbursement in the amount of $1,602,216, plus allocable interest, to cover all fees and expenses already incurred and to be incurred in the future. The Legal & Administrative Expense Portion also provides for a set aside of $65,000 for the Settlement Administrators to pay fees, costs and expenses to the Settlement Monitor and/or Settlement Claims Service.

35. Class counsel expended almost 30,000 hours investigating and prosecuting the Title VII sex discrimination claims over a four-year period.

36. Class counsel achieved substantial monetary relief and substantial programmatic relief.

37. Class counsel took substantial risks in accepting the matter on a straight contingency basis. Most significantly, class counsel faced the risk of expending millions of dollars of time and advancing litigation costs without any recovery.

38. In addition, the case presented a number of difficult and novel legal questions including, but not limited to, the propriety of class certification of employment discrimination claims against a company with highly decentralized business operations. Class counsel received no assistance from the EEOC.

39. Class counsel demonstrated considerable skill and determination throughout this litigation, and was fully prepared to try the case if a fair and reasonable settlement could not be reached.

40. Class counsel's acceptance of this case prohibited it from taking on other litigation matters.

41. The case was not likely viewed as desirable by the vast majority of attorneys in this District. The case was referred to class counsel with only a few days remaining before the expiration of Plaintiff Gwen Carlson's notice of right to sue.

42. Class counsel has advanced case costs of at least $1,602,216.00 in connection with investigating, prosecuting and settling the Title VII claims in this action. These expenses for court and witness fees, court reporters, travel and lodging, experts and consultants, long distance phone calls, and numerous other costs ordinarily paid for by clients were reasonably necessary to prosecute successfully the Title VII claims.

43. Third-party expenses associated with administering the claims process, complying with tax reporting obligations for the settlement fund and issuing award checks are separately provided for in the Consent Decree.

# CONCLUSIONS OF LAW

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. §§ 1331, 1343, 1367.

2. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because C.H. Robinson maintains its principal place of business in Eden Prairie, Minnesota, which lies within the District of Minnesota.

**NOTICE TO CLASS MEMBERS**

3. Under Fed. R. Civ. P. 23(e)(1)(B), the Court is required to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement. The form and method of notice must be adequate to inform the class members of the terms of the settlement, and provide them with an opportunity to object to the proposed settlement pursuant to Fed. R. Civ. P. 23(e)(4)(A).

4. The form and method of notice were adequate in this case to inform the class members of the terms of the settlement and to advise them of their rights to opt out or object.

**EVALUATION OF THE SETTLEMENT**

5. Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of class action settlements. A court may approve a settlement after finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *see, e.g.*, *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984).

6. In determining whether a proposed class settlement is fair, reasonable, and adequate, a district court must consider four factors: (1) the merits of the plaintiff's case,

weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 369 F.3d 922, 932 (8th Cir. 2005); *Van Horn*, 840 F.2d at 607. As set forth below, the Court concludes that each of these factors favors a finding that the settlement is fair, reasonable, and adequate.

7. The settlement provides substantial monetary and programmatic relief to the classes which justify the settlement in view of the substantial risks that the classes would not have prevailed at the class liability trial, would not have been further certified for purposes of monetary relief, or the damages recovered would have been substantially less than those sought.

8. Even if the classes prevailed at the class liability trial, class members likely would not obtain any individual monetary relief without several more years of litigation, including a likely appeal involving novel issues of law and numerous *Teamsters* mini-trials. Litigation expenses would continue to increase as a result of continued litigation.

9. At the time the parties reached the settlement, discovery was fully completed, and the parties were set to commence a five week jury trial.

10. Because they are experienced litigators, the Court gives substantial weight to class counsel's view that the settlement is fair, reasonable and adequate. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996).

11. The lack of objections, the small number of opt-outs, and the substantial number of claims filed reflects strong approval for the settlement. Due to the lack of objections, the parties do not expect appeals to be taken from any order finally approving the Settlement Agreement and Consent Decree.

12. The class claims portion of the monetary relief to the members of the classes will be distributed pursuant to formulas to be proposed by class counsel and approved by the Court. An allocation plan such as the one at issue here that is subject to close scrutiny at every stage is fair and reasonable even though the precise details are not yet determined. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 224 (5th Cir. 1981).

13. The settlement fairly and reasonably allocates the relief obtained from C.H. Robinson among the Named Plaintiffs and class members.

14. The award of attorney's fees in a class action settlement is committed to the discretion of the district court. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). The district court may calculate the fees by multiplying the hours reasonably expended by a reasonable hourly rate and adjusting the product. *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). The district court also has the discretion to calculate the fees by awarding a fraction of the common fund obtained by the attorneys. *Petrovic*, 200 F.3d at 1157; *Johnston*, 83 F.3d at 244-45. Here, the Court elects to calculate the fees by awarding a percentage of the common fund. The Eighth Circuit has not set forth factors that a district court should consider to determine an appropriate percentage. *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005). In a non-exhaustive list, the Third Circuit has identified several factors: (1) the size of the fund created and the number of persons benefited; (2) whether class members raised substantial objection to the settlement terms or fees requested; (3) the skill and efficiency of the attorneys; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) awards in similar cases; (8) the value of benefits accruing to class members

attributable to the efforts of class counsel as opposed to other groups, such as government agencies; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement when counsel was retained; and (10) any innovative terms of the settlement. *In re AT & T Corp.*, 455 F.3d 160, 165-66 (3d Cir. 2006).

15. Several of the factors identified by the Third Circuit are useful in this case. As noted above, the settlement creates a $15,000,000.00 fund. Of more than 1,800 people who received notice, more than 200 submitted claim forms. Twenty-two people timely opted-out. No objections to the settlement or class counsel's fee request have been made.

16. In the course of the litigation, class counsel demonstrated considerable skill and determination. Class counsel was fully prepared to try the case if a fair and reasonable settlement could not be reached. Class counsel devoted more than 30,000 hours over four years to the gender discrimination claims. Class counsel did not receive assistance from the EEOC.

17. In addition to monetary relief, the settlement provides for substantial programmatic relief.

18. Courts in this circuit have awarded attorney fees ranging from 25% to 36% of a common fund. *In re Xcel*, 364 F. Supp. 2d at 998 (summarizing cases). The Eighth Circuit affirmed an award to class counsel of 36% of a settlement fund where class counsel "obtained significant monetary relief on behalf of the class." *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). In this case, the requested fee—$5,325,000—amounts to 35.5% of the settlement fund. The Court regards the settlement fund as significant monetary relief. Accordingly, the requested fee is within the range established by other cases.

19. Based on these factors, the Court concludes that the fee requested by class counsel is reasonable and appropriate.

20. Class counsel's request for reimbursement of $1,602,216 in case costs is reasonable. These costs were reasonably necessary to prosecute the Title VII claims.

21. For all of these reasons, the Court holds that the settlement as reflected in the Consent Decree is fair, reasonable and adequate, is consistent with all applicable precedent, and should be approved.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The motion for final approval of the Settlement Agreement and Consent Decree [Docket No. 1045] is GRANTED.

2. Class counsel's motion for an award of attorney fees and reimbursement of case costs [Docket No. 1044] is GRANTED.

3. Class counsel is awarded attorney fees in the amount of $5,325,000 and cost reimbursement in the amount of $1,602,216, plus allocable interest as set forth in the Settlement Agreement and Consent Decree.

4. The Settlement Agreement and Consent Decree [Docket No. 1019] is APPROVED, and shall become effective when either the time for appeal has run without an appeal being filed or any appeal (including any requests for rehearing or rehearing *en banc*, petitions for *certiorari* or appellate review) has been finally resolved.

5. The persons identified as numbers 1 through 22 on Exhibit A hereto have excluded themselves from the monetary relief provisions in the Settlement Agreement and Consent Decree. They shall not be eligible for any awards from the Settlement Fund. The individual identified as number 23 on Exhibit A hereto has not submitted a valid or timely request for exclusion and is subject to the terms of the Settlement Agreement and Consent Decree. Exhibit A shall be filed under seal to protect the confidentiality of the specific information regarding each individual class member who requested exclusion.

6.  Counts I, II, and IV of the Second Amended Complaint [Docket No. 1056] are DISMISSED WITH PREJUDICE, except that the Court shall retain continuing jurisdiction limited to enforcement of the Settlement Agreement and Consent Decree.  Nothing herein shall affect the overtime pay claims set forth in Count III of the Second Amended Complaint.

Dated:  September 18, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
